al. The lease is for an increased rental. It also refers to a return of the premises in as good condition as when rented, necessary wear and damage by the elements excepted. This latter clause is necessarily indicative of the leasing of a building. The increase of rent would also indicate that there had been a change in the premises rented. The description in the lease is sufficient to cover buildings, if they were upon the premises. Under these circumstances, it seems to me that the cases of Talbot v. Cruger, 151 N. Y. 117, 45 N. E. 364, Loughran v. Ross, 45 N. Y. 792, 6 Am. Rep. 173, Stephens v. Ely, 162 N. Y. 79, 56 N. E. 499, and Precht v. Howard, 187 N. Y. 136, 79 N. E. 847, 9 L. R. A. (N. S.) 483, are decisive of the question.

[2] The defendant claims his right to removal under a bill of sale made to him by Cleaves. Not only had Cleaves taken a new lease, but apparently he had abandoned possession of the premises and notified the landlord that he did not care to occupy longer, and she had thereupon rented to another tenant, who was in possession at or shortly prior to the commencement of this action. If the right to remove the building had not been lost before, it seems to me it would have been terminated by the abandonment by Cleaves and the acceptance of such abandonment by the landlord.

Plaintiff is entitled to judgment as prayed for in the complaint, with costs.

Judgment for plaintiff.

(73 Misc. Rep. 135.)

HAMMER REALTY CO. v. MORAN.

(Supreme Court, Special Term, New York County. July, 1911.)

1. INFANTS (§ 38*)—MANAGEMENT OF PROPERTY—SALE UNDER ORDER OF COURT.
Under Code Civ. Proc. § 2348, authorizing the sale of an infant's property, where the personal property and the income of the real property are together insufficient to pay his debts, or for the maintenance and necessary education of himself and his family, or where the interest of the infant will be substantially promoted by such disposition on account of the real property being wholly unproductive, or for other peculiar reasons, a petition for the sale of real property of infants alleging that the property was unproductive, and that the sale was necessary for their support, education, and maintenance, the income from other productive real property being insufficient, and that the sale of the unproductive property would increase the actual net income from the productive property, and that all of the property is charged with debts and funeral expenses of their ancestor, will, on proof of these allegations, authorize a sale.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 84; Dec. Dig. § 38.*]

2. INFANTS (§ 39*)—MANAGEMENT OF PROPERTY—SALE UNDER ORDER OF COURT.
A petition for the sale of real property of infants is not defective for failing to set forth debts or demands against the infants' estate, as required by Code Civ. Proc. § 2350, where it was made to appear before the referee that there were no debts or demands against their estate, especially where the debts of their intestate were fully set forth.

[Ed. Note.—For other cases, see Infants, Cent. Dig. §§ 85–89; Dec. Dig. § 39.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. INFANTS (§ 45*)—MANAGEMENT OF PROPERTY—SALE UNDER ORDER OF COURT.
   Where an order directed the completion of a contract to sell the property of infants, and that the purchaser accept the deed from the special guardian, and that the proceeds of the sale be brought into court to await its further order, the purchaser was neither bound nor entitled to inquire concerning the distribution of the proceeds, nor could he successfully refuse to accept the deed tendered him.
   [Ed. Note.—For other cases, see Infants, Cent. Dig. § 96; Dec. Dig. § 45.*]

4. INFANTS (§ 39*)—SALE OF PROPERTY—APPOINTMENT OF SPECIAL GUARDIAN—JURISDICTION OF COURT.
   In proceedings for the sale of property of infants, the appointment of their mother as special guardian, she being a creditor of her husband's estate, though it may require unusual care on the part of the court in supervising the proceedings, does not raise a jurisdictional question.
   [Ed. Note.—For other cases, see Infants, Dec. Dig. § 39.*]

Action by the Hammer Realty Company against Dennis W. Moran to compel specific performance of a contract for the exchange of real property. Judgment for plaintiff.

P. S. Dean, for plaintiff.
James Kearney, for defendant.

PAGE, J. This is an action to compel the specific performance of a contract for the exchange of real property. The contract provides for the conveyance by each party to the other of the premises therein described free from all incumbrances, except such as are specified in the contract, by a proper warranty deed containing the usual full covenants conveying and assuring to the grantee an absolute fee of the said premises. The defendant contends that the title of the plaintiff to the premises which it seeks to convey is defective, and that is the sole issue raised by this controversy.

The alleged defect is said to arise in a proceeding for the sale of infants' real estate through which the plaintiff derived the title to the premises under consideration. The facts are not in dispute. The plaintiff's property was owned by one John Carl at the time of his death on April 21, 1901, and defendant concedes that Carl's title was good. He died intestate, leaving a widow, Alma J. E. Carl, and two children, Theodore E. Carl and Walter J. Carl, infants, who inherited the property in question subject to the dower right of their mother. On April 17, 1905, a petition was presented to the Supreme Court for the sale of the infants' real estate by the said Alma J. E. Carl as mother and general guardian of the said infants. In this proceeding the mother was appointed special guardian and sold the premises under direction of the court to one Ernest Hammer. Hammer conveyed a one-half interest therein to one George Jung, and thereafter Hammer and his wife and Jung and his wife conveyed the property to this plaintiff.

The defendant contends that these infants' proceedings were improper, and that no title passed to the said Ernest Hammer, because they were not conducted in conformity to the statutory requirements; and also, because the petitioner was not a proper person to be ap-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

pointed special guardian, as her interests were adverse to those of the infants.

[1] The petition in the infants' proceeding shows that the father of the infants died without sufficient assets to pay his funeral expenses and debts. His estate consisted of $284.92 in personalty, out of which sum $170.05 had been paid for debts and necessary expenses. The petitioner's mother had advanced $135.13 to pay the claim of $250 for funeral expenses. The petitioner also claimed that decedent was indebted to her in the sum of $2,300 for money loaned, as evidenced by three promissory notes. The petition further stated that the only property left by the decedent was an equity in the premises in suit and an equity in another piece of improved real estate; that the infants had no property whatever other than the said equities which they had inherited, and that the sale of the property in question was necessary for their support, maintenance, and education; that said property was unproductive, consisting of vacant lots; that it was subject to a mortgage of $2,100 at 5 per cent. interest; that the other piece of property produced an income of but $2,100, out of which must be paid interest charges of a mortgage of $12,000 at 4½ per cent., and taxes, water rents, insurance, and repairs, as well as the charges upon the unproductive property in suit, which in all amounted to about $1,335, leaving a net income of about $765; that by a sale of said unproductive property the said infants would avoid the payment of the interest and taxes thereon, and thus increase the net income from the productive property; and also that the payment of the above-mentioned debts out of the proceeds would avoid the accumulation of interest thereon. The order directing the completion of the sale and the acceptance of the deed from the special guardian also directed that the proceeds of the said sale should be brought into court to await the further order of the court. This order was entered upon the report of a referee before whom all the facts and circumstances relating to the necessity for the sale had been adduced in evidence. In the opinion of the referee the sale was deemed proper and advisable. This report, with the evidence upon which it was based, was submitted to the court at Special Term and the report duly confirmed.

It is the contention of the defendant that the infants' proceeding above referred to was improper and insufficient to confer jurisdiction for the reason, first, that the petition did not comply with the provisions of sections 2348 and 2350 of the Code of Civil Procedure. It is provided by subdivision 1 of section 2348 that an infant's property may be sold, mortgaged, etc.—

"where the personal property, and the income of the real property, * * * are, together, insufficient for the payment of his debts, or for the maintenance and necessary education of himself and his family."

Subdivision 2 of the same section further provides that such property may be sold—

"where the interest of the infant * * * require or will be substantially promoted by such disposition on account of the real property * * * being wholly unproductive, or for the purpose of raising funds to preserve or to improve the same, or for other peculiar reasons, or on account of other peculiar circumstances."

By reference to the recitals of the petition hereinabove set forth, it is evident that the petitioner has specifically alleged facts sufficient to comply with the requirements of either or both subdivisions of this section. It is shown that the infants have no personal property, and that the income from the real property is insufficient for their maintenance and education. It is further most clearly set forth that the property sought to be sold is unproductive, and that its sale will be of advantage in preserving and improving the productive real property; also, it appears that the income from the productive real property is not sufficient to pay the debts against the estate which the infants inherited and which thus became charges upon the realty. It is evident that the facts required to be shown to confer jurisdiction under the provisions of section 2348 are satisfactorily set forth in this petition.

[2] It is also urged that the petition fails to set forth an account of the debts and demands, if any, against the infants' estate, as required by section 2350 of the Code of Civil Procedure. It appears from the record before the referee that there were no such debts and demands; their mother testifying:

"They have no debts of their own except so far as they are chargeable with the debts due by their father."

As the section provides that the petition shall set forth these debts and demands only if there be any, it is difficult to see how it is defective for failing to set forth such debts and demands when there were none, especially as in this instance the father's debts were therein fully set forth. The defendant further contends that the sole object of the infancy proceeding was the selling of the infants' interest in the real property to pay unproven debts and funeral expenses due to the petitioner and her mother from the estate of the infants' father, deceased. While such reasons are given for the sale, other and sufficient reasons for the sale had been set forth in the petition in conformity with the statutory provisions as already shown, and the question of the payment of the debts of the father would properly arise on the disposition of the proceeds of the sale, which, as has been stated, was to be brought into court and distributed under its order. The contract for sale was entered into in conformity with an order of the court upon the report of a referee which set forth fully the reasons for said sale, and the report had been duly confirmed.

[3] The order directing the completion of the contract and the acceptance of the deed from the special guardian directed that the proceeds of the sale should be brought into court to await the further order of the court. It does not appear that the purchaser had any knowledge as to the distribution of the proceeds of the sale, nor was it his right or duty to inquire concerning that distribution. What the court directed to be done with the money which he paid for the property after the title had passed did not concern him, nor could he successfully protest against an improper distribution, even if he should become aware that such a distribution was about to be made, nor would his title be affected thereby. Hardie v. Andrews, 13 Civ. Proc. Rι. 413, 419. A proper case was made for the sale of the infants'

real estate, and, that being so, and the proceeding having gone forward under the direct supervision and by the order of the court, which. was fully advised as to all the circumstances, the purchaser himself could not have successfully refused to accept the deed tendered him in conformity to his own contract, made under the court's direction. Matter of Asch, 75 App. Div. 486, 495, 78 N. Y. Supp. 561.

[4] It is, however, still further urged that the proceedings were invalid because the mother was an improper person to be appointed special guardian, inasmuch as she, being a creditor of the estate, had interests adverse to the infants. As far as the sale of the property is concerned, it hardly seems as if her interests were adverse. She could not become a purchaser, and it would certainly seem that it would be to her own interest, as well as to that of her children, for whom she was general as well as special guardian, that the property should bring the largest possible price. However that may be, it has been specifically held in a similar case in respect to such an appointment that, while it may present a state of affairs which requires—

"the exercise of uncommon care on the part of the court in supervising the proceedings, it does not raise a jurisdictional question." Battell v. Torrey, 65 N. Y. 294.

I am therefore of the opinion that the title acquired by Ernest Hammer under the infancy proceedings was a perfectly good and marketable title. As this is the only objection urged against the title of the plaintiff herein, it follows that its title is good, marketable, and free from all incumbrances, except such as are specified in the contract, and that the deed which it offered was in entire performance of its part of the contract. I direct judgment for the plaintiff, with costs.

Judgment for plaintiff.